**UNITED STATES COURT OF APPEALS** March 22, 2012

**FOR THE TENTH CIRCUIT**

DANA PETERSON, M.D.,

        Plaintiff–Appellant,

v.

SUN LIFE ASSURANCE COMPANY
OF CANADA,

        Defendant–Appellee.

No. 11-2179
(D.C. No. 1:10-CV-01106-BB-DJS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

Dr. Dana Peterson appeals from the district court's grant of summary

judgment dismissing his claims under the Employee Retirement Income Security

Act ("ERISA").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Peterson began working for Southwest Medical Associates, Inc.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

("Southwest Medical") as a family practice physician in 1992. In September 2008, the New Mexico Medical Board issued an order requiring Peterson to have a member of his medical practice chaperone appointments with female patients and patients under the age of eighteen. As a result of this order and related events, Southwest Medical terminated Peterson on November 24, 2008.

On December 2, 2008, Peterson applied for partial and total disability benefits under a Sun Life Assurance Company of Canada ("Sun Life") group policy for long-term disability insurance issued to Southwest Medical. Peterson claimed he was disabled due to ankylosing spondylitis,[1] severe stress, and depression. He alleged that these conditions had worsened as a result of his legal issues. In March 2009, Sun Life denied Peterson's claims for disability benefits. In October 2009, the insurer denied Peterson's appeal of that decision.

Peterson then filed suit against Sun Life under 29 U.S.C. § 1132(a)(1)(B), the civil enforcement provision of ERISA. The district court granted summary judgment in favor of Sun Life, concluding that Peterson failed to establish that Sun Life acted in an arbitrary and capricious manner. Peterson now appeals.

**II**

In ERISA cases, "we review [the] plan administrator's decision to deny

_____

[1]    Ankylosing spondylitis is "[a] systemic rheumatic disorder characterized by inflammation of the axial skeleton and large peripheral joints." The Merck Manual 445 (17th ed. 1999) (italics omitted).

benefits to a claimant, as opposed to reviewing the district court's ruling." Holcomb v. UNUM Life Ins. Co. of Am., 578 F.3d 1187, 1192 (10th Cir. 2009). Because the plan at issue here "gives discretion to Sun Life in finding the facts relating to disability, we must uphold Sun Life's decisions as fact finder unless they were arbitrary or capricious." Nance v. Sun Life Assurance Co. of Can., 294 F.3d 1263, 1269 (10th Cir. 2002).[2] In conducting our analysis, we "may only consider the evidence and arguments that appear in the administrative record." Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1190 (10th Cir. 2007), abrogated on other grounds by Holcomb, 578 F.3d at 1192-93.

Peterson argues that Sun Life's denial of disability benefits should be reversed because: (1) the medical and other evidence in the record shows that he

---

[2]     As we explained in Nance:

> When reviewing [a denial of disability benefits in an ERISA case] under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [the Administrator's] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness-even if on the low end.

Id. (quotation omitted).

was disabled prior to his termination by Sun Life on November 24, 2008;[3] and (2) Sun Life's denial was the result of an arbitrary and capricious review process.

As a starting point, we agree with the district court that "[t]here is no evidence that [Sun Life] acted out of a conflict of interest when denying benefits to Plaintiff; rather, the record shows that there was a sufficient basis to find that Plaintiff was not disabled as defined by the Policy." Although the record indicates that Peterson suffered from ankylosing spondylitis, a doctor retained by Sun Life to review Peterson's medical record concluded that Peterson "had the physical capacity to continue to perform his profession until the date of his termination." Further, Peterson never claimed that he was unable to work during his employment with Southwest Medical. Even Peterson's treating physician reported that Peterson was capable of "light capacity" work. Sun Life's conclusion that Peterson's ankylosing spondylitis was not disabling is reasonable in light of this evidence.

The same is true as to Peterson's claimed depression. A reviewing physician stated that Peterson's degree of mental illness was "not consistent with impairment." We acknowledge that the district court failed to address two relevant records. First, on November 20, 2008, Southwest Medical received a

---

[3]    As the district court correctly noted, "Plaintiff's employment, and thus his insurance coverage from Defendant, ceased on November 24, 2008. In order to qualify for either partial or total disability benefits, his disabling condition would [therefore] have had to exist before November 24, 2008."

letter from Peterson's physician recommending he take two weeks' medical leave.[4]  Second, on December 8, 2008, Peterson's physician completed a statement in which she:  (1) diagnosed Peterson as suffering from acute stress and anxiety/depression; and (2) assessed a Global Assessment of Functioning ("GAF") score of 30.[5]  This score indicates that Peterson's "[b]ehavior [was] considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  DSM-IV at 32 (bold print omitted).  These omissions do not render Sun Life's decision arbitrary or capricious, however, because Sun Life addressed the GAF score and because the insurer had a reasonable basis for disregarding both of the documents submitted by Peterson's treating physician.

Peterson's treating physician referred Peterson for professional mental health counseling.  His first counseling session occurred the same day Southwest Medical terminated him.  The mental health doctor diagnosed Peterson as

---

[4]     Although the letter was dated January 18, 2009, we will assume, without deciding that this is a clerical error and that the letter was actually sent on or before November 20, 2008.  The letter has a "Received" stamp indicating that Southwest Medical received it on November 20, 2008.

[5]     A GAF score measures an individual's overall functioning level in terms of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

suffering from an adjustment disorder with mixed anxiety and depressed mood, and assessed a GAF score of 65. This score indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy . . .), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32 (bold print omitted). In both its initial and appeal letters, Sun Life relied on this GAF score as more accurate. Because Peterson's treating physician referred him to the mental health doctor for treatment, favoring the latter's score was reasonable.

As to the additional mental health evaluations that were prepared after Peterson was terminated, we conclude that Sun Life set forth reasonable and convincing grounds in its appeal letter to support its finding that Peterson's mental health problems did not prevent him from performing his job as a family practice physician at the time he was terminated by Southwest Medical.[6] As Sun Life explained, Peterson's treating mental health doctor assessed a GAF score of

---

[6] The district court held that these evaluations show only that Peterson was unable to work after he was terminated. However, in its letter denying Peterson's appeal, Sun Life did not reject the opinions of these psychologists based on this rationale. We are therefore precluded from relying on the district court's stated reason, because this court has held that "when reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." Flinders, 491 F.3d at 1190.

65 on the day Peterson was terminated. This score indicates mild symptoms rather than impairment.

Finally, Peterson argues that Sun Life acted in an arbitrary and capricious manner because it ignored the fact that other insurance companies determined that Peterson was disabled during the relevant time period. But Peterson has not cited any legal authority to support his argument that Sun Life was required to address these entirely separate benefit awards in its denial letters. Nor has Peterson established that the definition of disability in these other policies was identical to that in Sun Life's policy.

## III

We **AFFIRM** the district court's grant of summary judgment in favor of Sun Life.

Entered for the Court

Carlos F. Lucero
Circuit Judge